We are here for our last day of oral argument from this session, this Jacksonville session of the 11th Circuit. As I've said throughout the week, Judge Legault and I have just been absolutely privileged to be able to sit with our colleague, Judge Joe Flatt, in the courtroom that Judge Joe Flatt built. So thank you, Judge Joe Flatt, for hosting us this week. Just one announcement before we begin. I remember when I was practicing, I would hear some of the judges say, and I always thought it was a nice way to start things, we have our traffic light system, green means go, yellow means you're about to stop, and red means to stop. The red light is not aspirational, so it's not Miami traffic here, we actually take it seriously. Okay? With that, we'll get started with our first case. We have 22-10020, United States v. Mr. DeBiasi. David Wilson Good morning. My name is David Wilson. I am the attorney for the appellant, Mr. DeBiasi. I think that this case presents a fairly narrow issue of whether the trial court committed error in denying a defense request for a continuance to attempt to locate and secure the testimony of a witness who had been listed by the government and who, the night before trial, made statements to a third party that essentially took responsibility for the crime and would have, if believed by the jury had she testified, potentially would have exonerated him completely. This is a witness who had previously refused to communicate with counsel for the defendant, where there had been also two prior attorneys, neither of whom apparently attempted to contact her. We believe that under the circumstances of this case, the court did commit error in refusing to allow the defense time to secure this witness testimony. Judge Goldberg So let me just understand the procedural history a little bit. As I understand it, there was jury selection on the morning of, I think it's October 4th, I may have these dates right, maybe 3rd or 4th, but I think the trial was over the 4th, 5th, and 6th, or 3rd, 4th, and 5th. But the first day of trial, there's jury selection, and right after the lunch break, counsel, were you the trial counsel? Judge Windsor I was a trial attorney. Judge Goldberg So you come forward to Judge Windsor and tell Judge Windsor, Judge Windsor, I've just been learned from the sister of Mr. DeBlasi that she received text messages last night, or a day or two before, that the driver has exculpated or wants to exculpate and is going to testify or would like to testify. And we would like, ultimately, a short continuance to be able to explore that. Judge Windsor That's correct, to explore that and attempt to locate her and . . . Judge Goldberg You told the prosecutor before you made the announcement to the court that you . . . Judge Windsor I communicated immediately upon learning of that . . . Judge Goldberg That morning. Judge Windsor That morning, yes, Judge. This was the morning of the trial. Judge Goldberg Yeah, the morning. Judge Windsor Correct. Judge Goldberg Did he know about it, the prosecutor, when you assembled at 8.05 or whatever it was? Judge Windsor He was informed immediately upon that morning. Judge Goldberg So, you waited until around lunchtime before telling the judge? Judge Windsor No, I believe that the judge was informed early in the morning . . . Judge Goldberg Early in the morning, okay. Judge Windsor Yes, prior to the jury being impounded. Judge Goldberg So, we're going through some housekeeping things. Judge Windsor Yes, that's correct. Judge Goldberg Yeah, 4.04b and stuff like that. But the jury had not been sworn in yet, correct? Judge Windsor At that point, the jury had not been sworn. Judge Goldberg So, I wanted to pick up where I just left off. So, as I understand it, you asked for what I think it's described, I can look it up, the exact words, but a brief continuance, correct? Judge Windsor Yes. Judge Goldberg That's that first day. Judge Windsor Certainly. Judge Goldberg And that motion was what? Judge Windsor We just asked the court, we motioned the court for a continuance. Judge Goldberg And the court did what as to that motion? Judge Windsor The court, in essence, denied a continuance but allowed us to... Judge Goldberg So, let's take a look at docket entry 88. Judge Windsor Correct. Judge Goldberg I'm not sure that I read it exactly the same way. So, there's a long discussion. Judge Windsor Yes. Judge Goldberg That goes back and forth and... Judge Windsor The court adjourned, the judge adjourned the court early that day to give us extra time to attempt to contact the witness. So, we didn't stay the entire day. Judge Goldberg You took off the entire rest of the day, correct? Judge Windsor The entire rest of the day, which is probably three hours. Judge Goldberg What did you specifically ask for? You specifically asked for, was it a brief continuance? Judge Windsor I would have used the term brief continuance because we didn't know at the time. Judge Goldberg So, let's look at page 47 of docket entry 88, quote, and this is the court. Let me ask this, what would, so the request would be what, like a brief continuance or something so that you can investigate and kick the tires a little bit or, and then you jump in and said, well, I would, I would think so. I mean, I would certainly like to talk to Mr. Byron. I mean, they're, they're the ones that have under their subpoena, and I don't know if they've tried to contact her and what exactly is going on because they may be something that can help the situation. And then there's a long back and forth. And then ultimately, in page 55, after the long back and forth, Judge Windsor says, says, why, why don't we do this? I'll bring the jury in. We'll tell them that we've had an unanticipated issue, obviously won't tell them what it is. And that we are not going to begin this afternoon as anticipated because you were supposed to go right into the trial, but we will begin tomorrow, that we may complete the case tomorrow. We may not complete the case tomorrow. And that if we don't complete it, we will certainly complete it Wednesday. Is that everybody in agreement with that? Mr. Byron? Yes, Your Honor. Mr. Wilson? Yes, sir. Right. So a brief continuance was granted. Exactly the request. A brief continuance was, was granted. And at the time, all I knew was that we had these text messages that had come up and we didn't know how much time would be needed to, to communicate with the potential witness to find her or what she would even say. So I just want to be clear, though. The original continuance was granted as requested and everyone agreed? Yes. Okay. Then what happens is the next morning you come in, you say, I had contact with her. Correct. She confirmed what she texted. Correct. She said she was going to come in. Although now she is, I think you said off the grid or something to that extent. Can I, can I ask a question about before, before the next day, Mr. Byron is the AUSA? Mr. Byron was the, was it the trial counsel for the government? Yes. Now on the day that the, the district court judge grants an adjournance for the day so that you can try to reach out to the witness, do you have a communication with Mr. Byron? And does Mr. Byron indicate to you in any way, shape or form that he knows that she was going to change her testimony? Mr. Byron did not, had, had no knowledge of that. My understanding was, and Mr. Byron wasn't the original trial counsel for the government. He was handed the case shortly before the trial himself. And it's my understanding that, that no government attorney had actually interviewed her or spoken with her. So I don't believe that they had any knowledge of, of this right turn that she would take in, in texting and saying that . . . They had a certain process on her though. They had, correct. Okay, so . . . You're familiar with the defendant's right to compulsory process, I think. Yes, correct. And I can't find where in the, where in the transcript of the entire trial proceedings, those two days. Correct. That you asked the court to issue a bench warrant for her. First of all, the prosecutor didn't ask for a bench warrant. He could have had one. Correct. You agree? I agree. And you could stop everything while the, while the marshals or maybe the FBI try to locate her and bring her in. Correct. She's not responding to a subpoena. That's correct. The request that, that I made . . . You're familiar with Brady? Yes, sir. Okay. The government can think about this while you're . . . Sure. . . . have your argument. The government had control of the witness. And there are a lot of Brady cases in which the government, by not producing the witness over whom they have control, denies due process under Brady v. Dyess State. That's something the prosecutor could think about. That's, the prosecutor did not do that. As a matter of fact, the prosecutor did the opposite, didn't it? The government indicated that she had ceased communication with them after she had been subpoenaed and they had no intention to call her. When it came down to push comes to shove, when finally process was talked about, is it not so that the government said we're not going to pursue the subpoena? The government indicated that they were releasing her from the subpoena. Okay. We, the defense had asked the judge to have her taken into custody as a material witness, which the court denied. So I want to go back to where I left off. Yes, sir. So we're at the beginning of the second day of trial. And there, because the only thing on appeal right now is the motion to continue, correct? I would, I would agree. Okay. So what was the request, the ultimate continuance request, on the beginning of the first day of trial, the beginning of the second day of trial? The second day, if I recall correctly, I had indicated that we were not in a position to go forward without her potential testimony. And we wanted enough time to try to locate her, serve her with process, and bring her to court. Did you give a specific amount of time to the court? We did not give it a specific amount. So I'm looking at pages 92 and 93 of the transcript, and it's the ultimate request. You say to the court, I think that the request, because the judge asked, tell me what you want. And you say, I think that the request would be to continue the trial until such time as her appearance could be secured. That's correct. So indefinite. If she's in Brazil, we got to wait until we find her and bring her back. We knew she was in the area, in the Gainesville area. But no end time? I did not, I did not ask for a particular time frame within which we just figured that as soon as we could locate her, we would notify the court. What factors did the court consider in ultimately denying that request? I think the court denied ultimately the fact that the request based upon not wanting to inconvenience the jury, which I certainly understand. We'll explore the rest of that with your opposing counsel. Thank you, counsel. Good morning, counsel. You didn't try the case, did you? Yes, Your Honor, I did. You did try the case? Yes, Your Honor. David Byron for the government. Why didn't you tell the court, since you had an obligation, you had possession of the witness, basically, because she'd been served with a subpoena? To enforce the subpoena. Your Honor, we declined to enforce the subpoena, and I recognize that the court is . . . Let me tell you what you were ceding. You were creating an ineffective assistance counsel claim under chronic. You familiar with chronic? Your Honor, I'm not intimately familiar with that. Chronic is a line of cases, ineffective assistance cases, in which some outside force causes the lawyer to be ineffective. He would not have been ineffective if you had sought an order right away to enforce the subpoena because the witness is not appearing, the material witness. Your Honor . . . So you've got a chronic problem, and you have a Brady problem, in my view. I speak for myself. Yes, Your Honor. And so, if we affirm . . . The defendant is going to hire a lawyer and bring a 2255 on two grounds. One, that Mr. Wilson was ineffective, and the second, that the government violated Brady because they had the witness within their possession and let her go. Your Honor, I would disagree that the government had the witness within . . . You had a process served on her that was enforceable. And by the way, as an assistant United States attorney, your job is not to win at all costs. That's not what the job of the prosecutor is. Absolutely agree, Your Honor. Your job is to uncover the truth. I've been in the Southern District of Florida as an AUSA, and we've been there where we've had a multi-defendant trial, and the prosecutors dismissed the case in the middle trial because they learned that witnesses were not credible. That's what a prosecutor does. Absolutely agree, Your Honor. Okay, so if you learn information, whether or not you can verify it or not, but your obligation is to verify information, not to release a subpoena. Because if you have a witness that may be changing their testimony, then you need to verify whether that information is correct. And Your Honor, if I can clarify about the issue of releasing the subpoena, that came up in the context of the question of whether the witness appeared, whether the subpoena would act as a grant of immunity from the government, allowing her to testify without having to waive Fifth Amendment privilege. That was the context in which we released her from the subpoena. The reason why the government didn't consider this to be Brady- Counsel, it really doesn't matter, does it? You had control of the witness. Yes, Your Honor, we did have her under subpoena. There's an exchange between the court and you and Mr. Wilson on pages 100 and 101. The court says, I was suggesting, talking about Mr. Wilson, that he was not diligent. I'll just be clear on the record that I wasn't suggesting that you had not been diligent. I think any lawyer on either side would be very interested in talking to this woman on the circumstance we have here. So that's that. Here's what the court says then. The motion to continue is denied and we can address the motion to take her into custody on a break or a little bit later. A motion to take her into custody. The court is seeking a motion to take her into custody. Why? Because you had a subpoena served on her. Correct, Your Honor. And looking at 18 U.S.C. 31- The court's asking for a motion to take her into custody. Right there on the record. Your Honor, I believe that the court is referring to the fact that defense counsel had made an alternative request early on in the case to either grant a continuance or compel attendance of the witness. So it was not my understanding that the court was asking the government to make a motion for a material witness warrant but addressing the fact that the defense had previously raised the issue of bringing her in on a material witness warrant. The reason why the government didn't think that was appropriate at the time and why I didn't think it was appropriate is because that- All that could have been hashed out if she's in court. The whole issue about whether she's going to take the Fifth Amendment or this, that, or the other thing can be hashed out before the judge. Yes, Your Honor. Otherwise, it's lawyer talk. That's what you're giving me an assumption. The reasons why, why, why, why. That's not on the record. That's not evidence. Well, I did discuss with the district court that there was- Oh, there was a problem, obviously, with the Fifth Amendment problem. Yes. And there was also a problem with actual credibility of what Ms. Wyatt was claiming to be the case in her testimony in the text messages she sent. In addition to the fact that providing an affidavit suggesting that Ms. Wyatt has material testimony would require the government to prove attribution of who messages that are sent to the defendant system. That's your job as a prosecutor. If I had a case and they didn't want to stipulate to it, they didn't want to stipulate to whether or not when, where the heroin passed, then I have to call every single guard who watched the individual pass the heroin pellets, okay? That's your job. If the defense, the defense doesn't have to stipulate to anything or a witness doesn't have to, whatever. Your job is, it's not to be easy, okay? If you have to call witnesses in order to get evidence in, well, that's what you have to do. Understood and agreed, Your Honor. I was only speaking to the requirement under 3144 that if the government as the moving party is required to put forward an affidavit suggesting that this person, Ms. Wyatt, has material testimony about the case, we have no way of authenticating who is on the other side of Facebook Messenger. She had material evidence about the case. Come on. I mean, even if she was, even if it was inculpatory, as opposed to exculpatory, she had material information. One way or another, she's in the car. Agreed, Your Honor. You can't, I mean, you can't really argue that you question whether she had material information. I understand what you're saying, which is you question whether those text messages were in fact accurate, given everything else you knew about what happened in the case. Correct. And that was the position that we were focused on with the district court, is that Ms. Wyatt, in these messages, suggests something that is contradicted by the testimony of Mr. de Blasio. It's contradicted by the actual physical evidence shown in the in-car video. She says that the door to the passenger car, the passenger side of the vehicle was open and drugs were thrown out, whereas... During the transcript, you mentioned a few times in your argument about the factor of whether this would be helpful testimony, that there were jail calls between Ms., is it Ms. Wyatt? Yes, Your Honor. Ms. Wyatt and Mr. de Blasio. Do I have that correct? That's correct. Were those introduced into evidence? I know there were jail calls introduced between Mr. de Blasio and his sister, I believe, but I don't recall there being jail calls introduced, and let me know if there are, between Ms. Wyatt and Mr. de Blasio, and if so, what did those suggest regarding what she knew or how that was inconsistent with what she later purported to say in the text messages? They were not introduced, and the reason why they weren't prepared is because the substance of that conversation was, I don't know anything about the drugs from both parties, both people saying to each other, the defendant, Mr. de Blasio, and Ms. Wyatt saying, I have no idea what happened. And so, from my perspective reviewing that, that's not something we would prepare and use at trial, so we never intended to use it. It only came up in the context of this argument, because all of a sudden, at the 11th hour, Ms. Wyatt is changing her story. Right. So in the jail calls, she had said, I have no idea how these drugs got here, and no one understands this, we're all confused by what happened. Correct. And then later on said, it was all me, it was my drugs, he had nothing to do with it. Correct. And on scene, both Mr. de Blasio and Ms. Wyatt denied any knowledge of where the drugs came from as well. And so that was something that was taken into account in this question of the material witness warrant is, is any of what Ms. Wyatt is saying credible when you consider the fact that... Again, your obligation, okay, as a prosecutor, when you have a material witness who is now changing their potential testimony, is to decide and to have a conversation with that individual. And what you normally do is, if the person refuses to come, since you have her under subpoena, is you bring her in, and then they're going to put her on the stand, and she's either going to take the fifth in front of the judge or not. Yes or no? Correct. But you chose not to do that. You chose instead to release her because you would rather pretend that there wasn't a potential change of testimony. Your Honor, there was absolutely a change of testimony here. We didn't believe it to be credible. And when the question came, it was... I'm sorry, are you the fact finder? Your Honor, I'm... No, I... Are you the fact finder? I am not. You are not. We did not... And that's why, if you ever have Brady evidence, it's not for you to decide whether or not it's Brady. You turn it over. I completely agree, Your Honor, and this is not something we were aware of until... I think there was a discussion with... I don't know, because based on what I'm hearing from you, I think you think that you're the gatekeeper of information. You're not the gatekeeper of information. I agree, Your Honor. And the... Just one thing to clarify, this is something the government had absolutely no knowledge of until the lunch break of the first day of trial. If you look at page 41 of document 88... What difference does it make? The woman had been served a subpoena. She was under the power of the court. Her testimony... She became a material witness on Monday to the court and you. And you let her go. My concern... I think there's a Brady violation here. My question to myself is whether or not we decided on appeal or affirmed the conviction and let the district court entertain it in a 2255 motion, which is alleged as a Brady violation because of what the government did and also ineffective assistance to counsel under chronic. So that's the question. We don't have all the facts. I understand, Your Honor. And candidly, I didn't brief the Brady issue because it was... But it jumps off the page, would you agree? I would... Brady jumps off the page of this transcript. Your Honor, I certainly see the court's point. Well, that the defendant had a right to compulsory process jumps off the page, didn't it? He did and I think... That the government had control of the witness jumps off the page. Your Honor, again, she was served with a subpoena. She stopped communications. We did not have a good address for her. I mean, this is a situation where... This should be a learning experience for you in the long run. If not, you're going to find yourself in front of this court again and it's not going to be pleasant for you. Understood, Your Honor. I suggest that you read some of the opinions from this circuit with prosecutors who do not turn over Brady. It doesn't turn out well for them. Your Honor, we take the Brady obligation very seriously. I'm not sure you do. And it's a big OPR violation as well. You'll lose your license. Understood, Your Honor. Again, I didn't prepare an argument on Brady because of the fact that it wasn't on appeal, but I take the court's criticism very seriously and I respect it. But the only issue, I suppose, if the issue that the court wants to discuss is the Brady violation here, I don't have any other information to add to really elucidate the record. I think the record is clear that the government did subpoena the witness,  didn't have a good address with the witness. And so, you know, based on our belief, comparing her testimony to the evidence in this case that she was not providing credible evidence, we declined to seek a material witness warrant. I would have better argument on that issue, Your Honors, if I had considered it to be the main issue for the brief. Candidly, I did not brief it in the appeal and I'm not prepared to argue or extensively say. If the court has any questions about the issue that was appealed, the abuse of discretion, I can certainly provide argument on that. We believe that the district court did not abuse its discretion in denying the lengthier motion to continue. Judge Luck has pointed out that there was a brief continuance granted in this case in order for the defense to attempt to locate Ms. Wyatt. It is the government's belief that the district court appropriately exercised its discretion in this case by noting that there was, under the second of the four right factors, a very low probability that Ms. Wyatt would appear in court within a reasonable period of time and recognizing that the district court correctly exercised its discretion. Well, one of the problems for the district court is, the district court said on the record that I read to you earlier, the motion to take her into custody will be considered a motion. But nobody focused heavily on the district court's right to compulsory service or process. The court may have done something else if it realized that there was an ineffective assistance counsel brewing right in front of it, also a Brady violation brewing right there, and you have the right to compulsory process that nobody's talking about. I'm sorry, Your Honor. You guys were officers of the court. You should have been assisting the judge. Correct. I'm very troubled because I don't think that you understand what your obligation and your responsibility as an officer of the court and as an assistant United States attorney is. I really honestly think that you do not understand or comprehend the severity of what happened here. Your job is to help, to uncover the truth, not to win at all cost. I agree with you, Your Honor. I don't think that you understand that. You may be speaking and saying I agree with you, but I'm not sure you really do. Understood, Your Honor. I think my time has expired, so I will thank you, counsel. Thank you. Go ahead, counsel. I think that all the information I intended to communicate to the court has been communicated. If there's any questions, I'd be happy to do what I can. The only question I have is where you and I left off, which was it seems to me that in the portion of the transcript  I'm having trouble locating any statement, frankly, in that portion where the district court led up to the part that Judge Joflat read where he denied the continuance, where he ever mentioned jury convenience. It seemed to me that he mentioned a lot of other things like the potential that she's actually ever going to come in given what had happened and given that as you started off by saying she's off the grid, that's the first statement you told the court, she's off the grid. Correct. That was based on the fact that I had had a telephone conversation with her after the court had adjourned early where she had acknowledged the statements and then she indicated to me that she was going to be present to testify the following day. And then when I attempted to contact her the following morning. District court mentioned the likelihood of invoking the Fifth Amendment, which we all know was a strong likelihood here. I mean, it's just a matter of logic. She doesn't want to put herself in jail. She even said as much in the text messages. I don't want to get in trouble. What am I going to do? Well, that's true. She very well could have asserted her Fifth Amendment privilege, but she didn't say that to me on the phone. She simply told me that she would testify truthfully and insistently with what she had indicated in those messages. I'm just having trouble. It seems to me that the district court considered a number of different factors. If you look on pages 99, the court goes through a bunch of them. It's the government subpoena. If they're not seeking to pursue it at this time, that's kind of where we are. We're going to go forward. If she shows up and puts something on, then we'll deal with that. This is not a case where there was surprise and out of the blue witness. Everybody knew about her. People changed their testimony from time to time. It seems like there's at least a chance that if we continue on, that we already have. We are basically giving a third party the authority to interfere with the case. That's been scheduled for a long time. There have been four continuances to that point, and the case has been pending for quite some time, and you were the third attorney on the case? Correct. So the court considered a lot of other factors, not jury inconvenience. That's correct. And I believe, if my memory serves correctly, the jury inconvenience remark had been made prior to the first. It was in the first continuance, which he granted. That's correct. So if that's the case, it's hard for me to use that, where he granted the continuance as a factor that was to be considered for the second continuance, which he didn't, where he didn't mention that, but mentioned a lot of other moving parts and had been further informed by you about what had happened overnight. That's correct. That's correct. I would acknowledge that. Um, that's all that I have. I don't know if anyone else has any questions. Thank you, counsel. Thank you. All right, we'll call.